UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

| Case No. | CR 13-781-GAF | Date | November 3, 2014 |
|---|---|---|---|

| Present: The Honorable | **GARY ALLEN FEESS** |
|---|---|
| Interpreter | None |

| Stephen Montes Kerr | None | Sheila Nagaraj |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Jose Avelar | | | √ | Michael Emmick | √ | | |

**Proceedings:** (In Chambers)

### ORDER RE: MOTION TO WITHDRAW GUILTY PLEA

**A. INTRODUCTION AND BACKGROUND**

Defendant Jose Avelar ("Avelar") has been indicted in two cases: United States v. Jose Avelar, CR 13-781-GAF and United States v. Jose Avelar, et al., CR 13 -817-GAF.[1] In the 781 case, he is charged with the distribution of 12.9 grams of methamphetamine [27.8 grams gross weight]; in the 817 case, he is charged in two counts. Count One charges a distribution of 26.6 grams of methamphetamine; Count Six charges a distribution of 131.5 grams of methamphetamine. Through counsel, Deputy Federal Public Defender Naeun Rim, Avelar negotiated a plea agreement under which he agreed to plead guilty to the charge in the 781 case in exchange for the dismissal of the charges brought against him in the 817 case. The government agreed that it would not contend that the 26.6 gram transaction was relevant conduct, but indicated in the agreement that it would argue that the 131.5 gram transaction should be considered relevant conduct. The Court, after a detailed Rule 11 colloquy, accepted the guilty plea and set the matter for sentencing.

Avelar now moves to withdraw his guilty plea. Although his supporting memorandum cites two grounds in support of the motion, the motion actually identifies four grounds: (1) his attorney suffered from a conflict of interest that prevented him from receiving conflict free advice of counsel regarding the government's plea offer; (2) his plea was involuntary because his attorney failed to adequately advise him of the terms of the plea agreement; (3) he received inadequate assistance from the Court's interpreters which made it difficult for him to communicate with his attorney and to understand the plea

---

[1] In the 817 case, two additional defendants, Mario Morales and Luis Vega, are also charged with distribution of methamphetamine. The case against those two defendants is set for trial on November 18, 2014.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

colloquy; and (4) he anticipated a lower sentence than recommended by the government and the Probation Office and feels that he should not be held responsible for the amount of drugs transacted in the dismissed counts.[2]

As explained in greater detail below the Court concludes:

(1) No conflict of interest infected counsel's ability to provide effective assistance to Avelar regarding the content to the government's proposed plea agreement and Avelar's determination to plead guilty;

(2) Avelar was fully advised regarding the terms of his plea agreement both by his counsel before he entered his guilty plea and by the Court during the Rule 11 colloquy;

(3) Avelar received adequate assistance from the Court's interpreters and, with their assistance, was able to communicate with his counsel and with the Court regarding his desire to plead guilty, his understanding of the consequences of pleading guilty and his knowing, voluntary and intelligent waiver of his constitutional rights;

(4) Avelar was not promised a sentence lower than the U.S.S.G. range to get him to plead guilty, and understood that the government would argue that he should be held responsible for conduct described in dismissed counts in the 817 case.

Accordingly, Avelar's motion to withdraw his guilty plea is **DENIED**.

**B. LEGAL STANDARD**

A defendant's motion to withdraw a guilty plea is governed by Rule 11(d)(2) of the Federal Rules of Criminal Procedure. It provides:

> (d) Withdrawing a Guilty or Nolo Contendere Plea. A defendant may withdraw a plea of guilty or nolo contendere:
> (1) before the court accepts the plea, for any reason or no reason; or
> (2) after the court accepts the plea, but before it imposes sentence if:
> . . . .
> (B) the defendant can show a fair and just reason for requesting the withdrawal.

---

[2] In fact the Court has not yet addressed this issue. As discussed below, the parties included a term in the plea agreement regarding the dismissed counts and how they would be *argued* at the time of sentencing and the Probation Officer has included the drug quantity from a dismissed count in his computation of the guideline range. However, the Court has not yet ruled on these issues and will not until the sentencing hearing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

United States v. Davis, 428 F.3d 802, 805 (9th Cir. 2005); United States v. Ortega-Ascanio, 376 F.3d 879, 883 (9th Cir. 2004). The decision to allow withdrawal of a guilty plea is a matter within the discretion of the district court, United States v. Ensminger, 567 F.3d 587, 590 (9th Cir. 2009); United States v. Nostratis, 321 F.3d 1206, 1208 (9th Cir. 2003). A court abuses its discretion when its decision rests on an erroneous view of the law or is based on a clearly erroneous finding of fact.

      A court need not find that a plea was invalid as a condition to granting relief under Rule 11(d)(2). Ortega-Ascanio, 376 F.3d at 884. "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." Ortega-Ascanio, 376 F.3d at 883. That court held that it was error for the district court to require a showing that the plea was invalid as a condition to obtaining relief under Rule 11(d)(2)(B). Where the motion is based on newly discovered evidence, intervening circumstances, or any other reason that did not exist when the plea was entered, the defendant must show that the information or evidence would have "plausibly motivated a reasonable person in [defendant's] position not to have pled guilty had he known about the evidence prior to pleading." United States v. Garcia, 401 F.3d 1008, 1011-12 (9th Cir. 2008).

      At the same time, the United States Supreme Court warns that a defendant's change of heart does not require a trial court to bow to his wishes whenever he comes to regret his decision. United States v. Hyde, 520 U.S. 670, 676 (1997). In Hyde, the Supreme Court wrote:

> "Given the great care with which pleas are taken under [the] revised Rule 11, there is no reason to view pleas so taken as merely 'tentative,' subject to withdrawal before sentence whenever the government cannot establish prejudice. 'Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but a "grave and solemn act," which is "accepted only with care and discernment." ' " [Citations.]

Id. at 676-77; see also United States v. Barker, 514 F.2d 208, 221 (D.C. Cir. 1975). Thus, despite the admonition to apply Rule 11(d)(2) "liberally," the circuit, in affirming district court denials of motions to withdraw, has recognized that a defendant must make a real showing to obtain relief, which requires more than evidence of buyer's remorse. Ensminger, 567 F.3d at 592-93 (out-of-circuit district court decision granting dismissal on commerce clause grounds not "intervening circumstance" requiring withdrawal of guilty plea); United States v. Showalter, 569 F.3d 1150, 1155 (9th Cir. 2009) (reassessment of strength of prosecution's case not "intervening circumstance" or "newly discovered" evidence within the meaning of the rule); United States v. Briggs, 623 F.3d 724, 728 (9th Cir. 2010) (claimed lack of understanding of consequences of guilty plea, including potential severity of the sentence, not grounds for granting a motion to withdraw plea); United States v. Michlin, 34 F.3d 896, 899 (9th Cir. 1994) (defendant not permitted to withdraw guilty plea based on counsel's erroneous prediction regarding court's sentence). Likewise, counsel's failure to raise or pursue meritless defenses

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

or legal challenges to the prosecution's case is not a ground for relief under Rule 11(d)(2)(B). Id. at 900-01.

With the legal standard in mind, the Court turns to Defendant's motion.

**C. DISCUSSION**

Avelar's motion does not merit extended discussion. First, at the threshold the Court notes that Defendant does not challenge the adequacy of the plea colloquy and does not deny his involvement in the drug transaction to which he pled guilty. Indeed, he concedes that he arranged the transaction but now asserts that he has a defense to that charge – an apparent duress defense (which is not newly discovered) based on his alleged fear of a gang member who was apparently involved in the transaction. (Docket No. 57, Decl. Of Jose Avelar, at 2.) His concession is consistent with the factual basis of his plea agreement in which he stipulated that on November 5, 2008, he arranged the distribution of 12.9 grams of methamphetamine in exchange for $850 to a person who turned out to be a government informant. (Docket No. 63, Ex. A, at 5-6.) Having conceded these points, Avelar seeks to withdraw his guilty plea mainly because he has now gotten a look at the Probation Officer's sentencing recommendation and the government's sentencing argument and hopes to do better by contesting the charges brought against him. However, because the case law plainly holds that remorse is not a "fair and just" reason for withdrawing a guilty plea, he has decided to test the Court's credulity with arguments that lack evidentiary support, and otherwise vary from improbable to preposterous.

### *(1) Counsel's Conflict of Interest*

Avelar's current counsel was appointed three weeks after Avelar entered his guilty plea based on the Federal Public Defender's Office having identified a conflict of interest that precluded further representation in the case. About three weeks later, in a declaration filed with the Court, Avelar's then-counsel, Deputy Federal Public Defender Naeun Rim, stated:

> On March 24, 2014, Hilary Potashner, the Chief Deputy of the Office of the Federal Public Defender, determined that our office cannot represent Mr. Avelar due to a conflict of interest. She instructed me to apprise the Court that there is a conflict of interest, and to seek relief and appointment of new counsel for Mr. Avelar.

(Docket No. 39, ¶ 5.) On March 31, 2014, the Court granted the request to withdraw as counsel and appointed current counsel. Avelar now attacks the validity of his plea agreement based on this conflict of interest.

Although, as discussed below, Ms. Rim has provided information in interrogatory answers regarding the conflict of interest issue, the Court need not rely on those answers to address Avelar's argument. Ms. Rim's March declaration did not indicate that she knew of any conflict of interest at the time that the plea agreement was negotiated or that she was in any way affected by the conflict of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

interest. Avelar offers no other evidence that Ms. Rim was aware of any conflict of interest when she advised him regarding the plea offer, or that the conflict of interest even existed at the time he entered the plea. Moreover, Avelar offers no evidence as to how the purported conflict affected his counsel's advice, or whether and why, absent the conflict, he would have been advised not to accept the government's plea offer.

Ms. Rim has now provided information that demonstrates that the conflict was unknown when the plea was negotiated and the Rule 11 colloquy was conducted. The evidence creating the conflict was disclosed by Avelar in Ms. Rim's presence during a proffer session with the government after he had entered his guilty plea. (Docket No. 71, at 21.) At that session, Avelar claimed that he had information regarding a gang member named "Activo," another client of the Federal Public Defender, including information that would implicate him in a pending case. (Id.) That information was communicated to the Chief Deputy Public Defender who then determined that a potential conflict existed and that the Federal Public Defender should avoid representing either Avelar or "Activo." (Id.) Thus, there is nothing in the record that would suggest that Avelar received advice that was or could have been affected by the possible conflict of interest.

Finally, the timing of this motion belies Avelar's claim that the conflict of interest was of concern to him. Notice of the conflict was given in mid-March after which Avelar was appointed new counsel. No complaint was made to the Court regarding Ms. Rim's representation and no motion was made to withdraw the guilty plea. Instead, the case went forward. Two months later, the Pre-Sentence Report and Recommendation Letter were disclosed to Avelar, and a month later the government filed its sentencing position. It was only after having seen the sentencing recommendations, indeed more than two months after the Pre-Sentence Report was disclosed, that Avelar finally made his motion to withdraw. In context, the timing of his motion indicates his concern over his potential sentence rather than a legitimate complaint over his representation by counsel. That is not a proper ground for withdrawing a guilty plea. United States v. Briggs, 623 F.3d at 728.

### *(2) The Claimed Inadequacy of Interpreter Assistance*

When Avelar first indicated a desire to withdraw his guilty plea, he cited only his counsel's conflict of interest and her purportedly erroneous or confusing advice as grounds. (Docket No. 51.) Later, after having been exposed to discussions regarding his admissions during the plea colloquy, he embellished his argument to include a claim that the Court's certified interpreters did a poor job of translating from English into Spanish, both during his meetings with Ms. Rim and during his Rule 11 colloquy in Court. His conduct at the plea hearing belies this claim.

At the outset of the plea colloquy in response to the Court's very first question, Avelar answered in English, suggesting that he may not even have needed an interpreter. Nonetheless, out of an abundance of caution, the Rule 11 colloquy proceeded with the assistance of a Spanish language interpreter who handled the proceeding without any apparent difficulty in communicating with Avelar.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

Thereafter, the Court advised Avelar as follows:

> Court: If I ask you a question today that you don't understand, or if I say something that you don't understand, please let me know. I will take as much time as necessary to make myself clear. Do you understand that?
>
> Defendant: Yes.

(Docket No. 53, Reporter's Transcript of Proceeding of March 6, 2014, at 8:21-15.) During the remainder of the hearing, Avelar answered promptly and responsively to every single question posed throughout the Rule 11 colloquy. At no time during the hearing did he complain that he was having any difficulty with the translation or any difficulty understanding the Court's questions.

Moreover, the Court inquired whether Avelar had been provided with interpreter assistance in connection with his representation by Ms. Rim. The record contains this exchange:

> Court: Where did you go to school?
>
> Defendant: In El Salvador and one year here in Los Angeles.
>
> Court: Do you speak any English?
>
> Defendant: No. I understand a little.
>
> Court: During the course of your representation by your attorney in this case, have you had the assistance of an interpreter?
>
> Defendant: Yes.
>
> Court: And with the assistance of the interpreter, have you been able to communicate clearly and completely with your attorney regarding all matters of importance to your case?
>
> Defendant: Yes.

(Id. at 9:10-23.)

Finally, the Court notes that Avelar also conceded that an interpreter read the plea agreement to him before he signed it. The record contains this colloquy:

> Court: [T]he document I'm looking at is captioned "The United States of America, Plaintiff, vs. Jose Avelar, Defendant." It's numbered CR 13-781-GAF and it's titled

>"Plea Agreement for Defendant Jose Avelar." Is that the document you've got there?
>
>Ms. Rim: Yes.
>
>. . . .
>
>Court [to Avelar]: Now before you placed these signatures on the [plea agreement], was it read to you and translated from English into Spanish?
>
>Defendant: Yes.
>
>Court: And was the entire document read to you word for word, line by line, from the beginning of the document to the end of the document?
>
>Defendant: Yes.

(Id. at 13:19-15:5.)

In short, while under oath, Avelar responsively answered every question posed to him, advised the Court that he was supplied with interpreter assistance which allowed him to communicate "clearly and completely" with his counsel, and conceded that the plea agreement had been read to him in its entirety and translated from English into Spanish. At no time when being asked about the use of interpreter assistance did Avelar indicate any problem or dissatisfaction with the services provided. The Court therefore need not credit his current statements which amount to an assertion that he lied under oath during his plea colloquy. The Court is thoroughly persuaded that Avelar was provided with competent interpreter assistance both prior to and during the Rule 11 colloquy. The Court therefore turns to an examination of the remaining arguments.

### *(3) Avelar's Alleged Misunderstanding Regarding His Sentencing Exposure*

Avelar contends that he was not properly advised regarding the case against him and did not understand his sentencing exposure. The record demonstrates otherwise. At the Rule 11 colloquy, Avelar acknowledged that he understood the charges against him, that he understood the elements of the charge, and that he had no questions regarding the charges. (Docket No. 53, at 11-12.) This exchange followed:

>Court: Have you fully discussed the charges with your counsel?
>
>Defendant: Yes.
>
>Court: And have you and your attorney discussed the facts and circumstances relating to those charges?

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

>Defendant: Yes.
>
>Court: *And have the two of you discussed the possible defenses that you might have to the charges if the case were to proceed to trial?*
>
>Defendant: *Yes.*
>
>Court: Do you need any additional time to speak with your attorney regarding any of those matters before I go forward with you guilty plea here today?
>
>Defendant: No.

(Id. at 12:6-20.) (Emphasis added.) Not only did he acknowledge his understanding of the charges, he agreed that he fully understood the potential sentence that could be imposed in this case, and in particular that the case involved a 40 year maximum prison term and a mandatory minimum term of five years in prison. (Id. at 21:14 – 22:16.) Avelar was further advised and acknowledged that, unless the Court found that his case made him eligible for safety valve treatment, the minimum sentence that could be imposed was five years. (Id.) The Court further advised him that the Court was not a party to the plea agreement in this case and that the Court could impose any sentence that it believed to be appropriate "without allowing you to withdraw your guilty plea." (Id. at 16:19-20.) Later during the Rule 11 colloquy, the Court reiterated that "I would have the discretion to impose a sentence that could be anything from the minimum period provided by law to the maximum period provided by law." (Id. at 25:2-3.) Avelar stated that he understood. (Id., line 6.)

With respect to Avelar's current claim that he expected a sentence of one year and one day, both the Rule 11 colloquy and the plea agreement, belie that contention. During the colloquy, the Court inquired regarding Avelar's knowledge and understanding of his plea agreement. After establishing that an interpreter had read the entire agreement to him and translated from English into Spanish, the following inquiry was made:

>Court: And did you have an opportunity to discuss the contents of the plea agreement with your attorney before you signed it?
>
>Defendant: Yes.
>
>Court: Were any questions that you may have had about this plea agreement answered by you attorney to your satisfaction?
>
>Defendant: Yes.
>
>Court: Are there any question that remain in your mind about this plea agreement that you'd like your attorney to answer for you now before we go forward?

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

> Defendant: No.

(Id. at 15:6-17.) After having satisfied itself that Avelar had in fact reviewed and discussed the agreement with his attorney, the Court asked two additional questions of particular importance to Avelar's current contentions.

> Court: Does this written agreement constitute the entirety of your agreement with the government?
>
> Defendant: Yes.
>
> Court: Has anyone, other than the government, any other person made any promise or assurance to you of any kind to get you to plead guilty in this case?
>
> Defendant: No.

(Id. at 15:18-24.) Thus, despite Avelar's current contention that he received assurances from his attorney regarding his sentence to induce him to accept the government's plea offer, Avelar denied receiving any such assurances when questioned on that subject under oath.

The plea agreement itself also contradicts his current assertion that he was surprised and dismayed to find out that dismissed conduct was being taken into consideration by the Probation Office and the government in their sentencing recommendations. The plea agreement is noteworthy in a number of respects:

> – Although Avelar entered a guilty plea only to the single count in 781, and the government agreed to dismiss the 817 charges against him, the agreement expressly provided that the Court could consider dismissed charges in determining the USSG range and the propriety of any variance or departures from the range (Docket No. 63, Ex. A, ¶ 3.(c))
>
> – The government agreed that it would not argue that he should be held responsible for the methamphetamine in Count One of the 817 indictment, (id.), but the agreement further stated, "Defendant admits that he is responsible for knowingly and intentionally distributing 12.9 grams of actual methamphetamine, ***and acknowledges that the USAO believes that defendant is responsible for knowingly and intentionally distributing approximately 144.4 grams of actual methamphetamine, and that the USAO will assert that position at sentencing.***" (Id. ¶ 13.) (Emphasis added.)
>
> – The parties did not agree on a base offense level, but agreed that it was at least 26 and not greater than 32. Based on the tables in effect on the date of the agreement, the level 26 would apply for amphetamine in amounts of 5 to 20 grams of actual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

methamphetamine; level 32 would apply for amounts of at least 50 but less than 150 grams of actual methamphetamine. In short, this range reflected the parties' acknowledgment, at the time of the plea agreement, of their difference of opinion as to the amount of methamphetamine that would be used to compute the sentencing guideline range.

– Both parties were free to argue any offense characteristics, adjustments or departures under the USSG.

Thus, the plea agreement, which Avelar admitted under oath had been read to him, translated for him, and explained to him by his counsel, expressly states that the government would assert the very position that Avelar now claims to have taken him by surprise. His current claim that he did not understand the potential sentencing consequences of pleading guilty are belied by the Rule 11 colloquy. In addition, his prior counsel notes that Avelar was unhappy about the government's ability to argue relevant conduct but that he chose to plead guilty rather than risk the mandatory minimum 10 year sentence if he were convicted on Count Six of the 817 case. (Docket No. 71, at 4-5.) In these circumstances, Avelar has not identified a "fair and just reason" to permit Avelar to withdraw from his guilty plea because they were fully disclosed to him before he entered his plea. His change of heart is not a ground that will support his motion to withdraw.

### *(4) Prior Counsel's Behavior*

Avelar has made serious allegations against his Deputy Federal Public Defender that she has completely refuted in her interrogatory answers.

Avelar contends that Ms. Rim seemed to be "pushing" him to plead guilty, and that "she made threatening remarks about what might happen to my wife and kids if I did not sign the plea agreement." (Docket No. 57, ¶ 10.b.) He provides absolutely no detail as to what "threats" were made or why Ms. Rim would have any reason to threaten him to get him to plead guilty. He further asserts that he resisted signing the agreement but that he questioned, "If I sign it, nothing will happen?" and Ms. Rim said yes. (Id.) This statement, beside its obvious lack of credibility, is ambiguous. Does he mean that nothing would happen to him? Nothing would happen to his family? Nothing would happen in the case? Given that Ms. Rim is an experienced and respected Deputy Public Defender, and that there is simply no apparent motive on her part to provide Avelar with anything other than her best professional judgment, Avelar's self-serving accusations against Ms. Rim are implausible on their face.

Moreover, Ms. Rim refutes these accusations in her interrogatory responses filed with the Court. The Court will not set out those responses in detail, but in summary Ms. Rim states:

> (1) Whenever Avelar indicated that he did not understand a concept she was explaining, he would let her know and she would go over it until he indicated that he did understand. (Docket No. 71, at 17.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

(2) Avelar appeared to have no difficulty understanding translations as they were occurring. (Id.)

(3) The entire plea agreement was read to Avelar and translated into Spanish, including the entire sentencing range, from the mandatory minimum to the statutory maximum and the provision indicating the government's intent to argue that he sold 144.4 grams of methamphetamine in 2011. A Spanish speaking colleague, Humberto Diaz, also assisted in explaining the mandatory minimum and the relevant conduct provisions of the sentencing guidelines. (Id. at 18.)

(4) All evidence was reviewed with Avelar. (Id. at 19.)

(5) Ms. Rim never told Avelar to "forget about" the 817 case. They discussed the strength of the evidence in that case, noted some of the weaknesses in the case, but also considered the risks of going to trial and subjecting himself to a mandatory minimum 10 years in custody if convicted. She explained the difference between being convicted in 817 and having it considered as relevant conduct. (Id. at 20.)

(6) Ms. Rim discussed the benefits of the safety valve and the range of possible sentences under the plea agreement. She explained, however, that in the end the Court could sentence Avelar to the statutory maximum, which is 40 years in custody. (Id. at 22-23.) She explained that, if the Court applied the safety valve, the sentence could be less than the statutory maximum, perhaps even as low as a year and a day, but that such a low sentence was not likely. (Id. at 23.) Ms. Rim did not promise that he would receive safety valve treatment, which was a matter to be decided by the Court. (Id. at 23-24.)

(7) Ms. Rim never threatened Avelar or his family. (Id. at 24.)

In short, Ms. Rim provided Avelar with precisely the kind of advice that one would expect from competent counsel. Such advice necessarily included a discussion of many scenarios, but with a clear statement identifying the worst case possibility and the caveat that a good outcome could not be guaranteed. In the end, Avelar chose to eliminate the risks associated with a trial of the 817 case by pleading guilty in 781. It was a rational choice.

## IV.
## CONCLUSION

Avelar has not shown a fair and just reason to withdraw his guilty plea. He has not shown any new evidence, any inadequacy in the plea colloquy, or any intervening circumstance that would have plausibly motivated him to proceed to trial rather than plead guilty.

/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

For the foregoing reasons, the motion to withdraw guilty plea is **DENIED.** The case is set for sentencing on Monday, November 17, 2014, at 1:30 p.m.

**IT IS SO ORDERED.**